UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,   CASE NO.: 00-6293-CR-FERGUSON
                            Magistrate Snow
    Plaintiff,
vs.

GARY WILLIAMS, et al.,

    Defendants.
_____/

## MOTION FOR REVOCATION OF DETENTION ORDER

COMES NOW the Defendant, GARY WILLIAMS, by and through his undersigned counsel and hereby files this Motion for Revocation Detention Order pursuant to 18 U.S.C. §3145(b) and states unto the Court as follows:

### FACTS

On October 19, 2000, a detention hearing was held as to Defendant Gary Williams and the other defendants in this case. At the hearing, the government proffered that this case stemmed from an investigation conducted by the Fort Lauderdale Police Department regarding street level crack cocaine sales along NW 4th Avenue in the city of Fort Lauderdale by young black males. Specifically, it was stated that some of the defendants were considered leaders while others were not. GARY WILLIAMS was mentioned as one of the individuals who was not a leader among the defendants.

The government further proffered that GARY WILLIAMS had participated in three sales of crack cocaine to an undercover police officer on April 6, 2000, May 4, 2000 and May 19, 2000 which were video and audio taped. The sum and substance of the proffer in this regard is memorialized by offense incident reports provided to counsel in discovery.

A copy of the portions relative to GARY WILLIAMS is attached hereto as Exhibit A. The total amount of crack cocaine which was alleged sold by WILLIAMS is less than one gram. However, the government proffered that a conspiracy existed between all the defendants and assessed each defendant with the total amount of crack cocaine sold to the undercover police officer during the entire sting operation over an approximate fourt month period. This amount is approximately 30 grams.

On cross-examination, Detective Hendricks of the Fort Lauderdale Police Department could not point to any direct evidence that a conspiracy existed between the defendants which would justify attributing all the crack cocaine sales to all the defendants. Detective Hendricks could only say that the defendants were all observed talking with each other at various times between March and July of this year, the time period alleged in the conspiracy count of the indictment. However, no tape recordings were made of these alleged meetings and Detective Hendricks could not testify as to what the defendants were discussing.

The government also proffered as evidence of a conspiracy a post arrest statement allegedly made by a co-defendant stating that the "group" knew that the "white guy in the black Honda was a cop." However, the statement did not refer to GARY WILLIAMS as part of the "group" or, moreover, indicate who the "group" was. The only other evidence suggested by the government as to GARY WILLIAMS' participation in a conspiracy was his alleged statement to the undercover office inquiring, in essence, whether the officer knew "Tray", one of the co-defendants. This was the entire evidence presented at the detention hearing regarding GARY WILLIAMS' involvement in a conspiracy involving 30 grams of crack cocaine.

At the hearing, counsel for Defendant presented Defendant's mother and grandfather, lifelong residents of Broward County as well as several other family members and friends. It was requested that WILLIAMS be released on a personal surety bond co-signed by his mother and his grandfather. It was also suggested that Defendant's mother act as third-party custodian for the Defendant and that a curfew and/or strict pre-trial reporting requirements be imposed in lieu of pre-trial detention as requested by the government.

A detention order was entered as to GARY WILLIAMS on October 20, 2000. The order states that the weight of the evidence against the defendant was substantial. Detention Order at para. 2. The court further found that Defendant was on probation for possession of cocaine in the Seventeenth Judicial Circuit in and for Broward County, Florida at the time the offenses were allegedly committed. Detention Order at para. 3. For these reasons, the court found that WILLIAMS is a danger to the community and should be detained pending trial in this case.[1]

Defendant respectfully submits that the finding that Defendant is a danger to the community is in error and that the detention order should be revoked. Under the facts presented to the magistrate at the detention hearing, Defendant did not participate in a conspiracy involving in excess of five grams of crack cocaine. Further, there exist conditions of release which would reasonably assure the safety of the community.

## LEGAL DISCUSSION

The court detained Defendant citing the factors enumerated in 18 U.S.C. §3142(g).

---

[1] The court specifically found that Defendant is not a risk of flight. Detention Order at para. 3. Therefore, this motion will only address the finding that Defendant constitutes a danger to the community.

The court found that the offense involved a narcotic drug and that the weight of the evidence was substantial. 18 U.S.C. §3142(g)(1) and (2). The court also found that Defendant was on probation at the time of the current offense. 18 U.S.C. §3142(g)(3)(B). Defendant does not dispute that he was on probation at the time of the offense. However, Defendant disputes the finding that weight of the evidence as to conspiracy involving 30 grams of crack cocaine is not at all substantial. The testifying officer did not demonstrate that WILLIAMS conspired to distribute 30 grams of crack cocaine. Defendant notes that the sentencing guidelines for less than a gram of crack cocaine and a criminal history category II is 24-30 months if convicted at trial. No five year minimum mandatory attaches unless the conspiracy between all defendants for all amounts is demonstrated beyond a reasonable doubt. See United States v. Rogers, 2000 U.S. App. LEXIS 24759 (11th Cir. Sept. 29, 2000)(stating that "[i]n short, we hold today that drug quantity in section 841(b)(1)(A) and section 841(b)(1)(B) cases must be charged in the indictment and proven to a jury beyond a reasonable doubt in light of Apprendi [v. New Jersey], 120 S.Ct 2348 (2000).

The other factors to be considered under 18 U.S.C. §3142(g)(3)(A) and (4) weigh in favor of the Defendant. The magistrate essentially conceded that Defendant's family and community ties as well as his length of residence in the community (since his birth 19 years ago) were demonstrated. Further, the nature and seriousness of the danger to the community that would be posed by the Defendant's release was not at all demonstrated. The magistrate noted that there have been no complaints of drug dealing in the neighborhood since the defendants were arrested. Detention Order at para. 2. However, the alleged conspiracy ended in July of this year; and no allegation was made that

Defendant personally sold any drugs after May 19, 2000. Defendant was arrested on or about October 13, 2000. Therefore, it has not been shown that Defendant sold drugs between May 19, 2000 and October 13, 2000. Thus, there is no danger to the community based on this assumption that the arrest of the Defendant has caused an entire neighborhood to be free of drug dealers.

Having demonstrated that the factual basis for the detention is erroneous, Defendant submits that there are indeed conditions of release which would assure the safety of the community. 18 U.S.C. § 3142(c) states:

> (1) If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person--
> (A) subject to the condition that the person not commit a Federal, State, or local crime during the period of release; and
> (B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person--
> (i) remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community;
> (ii) maintain employment, or, if unemployed, actively seek employment;
> (iii) maintain or commence an educational program;
> (iv) abide by specified restrictions on personal associations, place of abode, or travel;
> (v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;
> (vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;
> (vii) comply with a specified curfew;
> (viii) refrain from possessing a firearm, destructive device, or other dangerous weapon;

(ix) refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner;

(x) undergo available medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency, and remain in a specified institution if required for that purpose;

(xi) execute an agreement to forfeit upon failing to appear as required, property of a sufficient unencumbered value, including money, as is reasonably necessary to assure the appearance of the person as required, and shall provide the court with proof of ownership and the value of the property along with information regarding existing encumbrances as the judicial office may require;

(xii) execute a bail bond with solvent sureties; who will execute an agreement to forfeit in such amount as is reasonably necessary to assure appearance of the person as required and shall provide the court with information regarding the value of the assets and liabilities of the surety if other than an approved surety and the nature and extent of encumbrances against the surety's property; such surety shall have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond;

(xiii) return to custody for specified hours following release for employment, schooling, or other limited purposes; and

(xiv) satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community.

Defendant presented his mother and grandfather as co-signors on a personal surety bond and as third party custodians. Defendant also suggested that strict curfew and/or reporting requirements be imposed as conditions of release. Under section 3142(c) release of the Defendant is appropriate. Therefore, the court should revoke the order of detention and permit that the Defendant be released on reasonable bail conditions.

WHEREFORE the Defendant respectfully requests that this Honorable Court grant the relief requested herein and any other relief that this Court deems just and proper.

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was sent on November 1, 2000 to BRUCE BROWN, ESQUIRE, Office of the United States Attorney, 500 East Broward Boulevard, Fort Lauderdale, Florida 33301.

ENTIN, MARGULES & DELLA FERA, P.A.
200 East Broward Boulevard
Suite 1210
Fort Lauderdale, Florida 33301
Telephone: (954) 761-7201
Facsimile: (954) 767-8343

By: _____
RICHARD DELLA FERA
Fla. Bar No.: 066710

## FORT LAUDERDALE POLICE DEPARTMENT
## SUPPLEMENT PAGE 7

| Original Date Reported | | Case Title | | |
| --- | --- | --- | --- | --- |
| | | Narcotics Complaint | | |
| Reported: Day | Date | Time (mil) | | Related Report Number(s) |

| Incident Type: 1. Felony 2. Traffic Felony | 3. Misdemeanor 4. Traffic 5. Ordinance 6. Other | OFFENSE CHANGED TO | ☒ N/A |
| --- | --- | --- | --- |
| OFFENSE #1 | Type Title | A-Attempted C-Committed | Statute Violation Number    -    | Municipal Ordinance    -    |
| OFFENSE #2 | Type Title | A-Attempted C-Committed | Statute Violation Number    -    | Municipal Ordinance    -    |
| Incident Location (Street, Apt Number) | | City | Zip | Rept. Area | Zone |

Detective Heller was travelling south in the 1500 block of Northwest 4 Avenue when he was flagged down by a black male. The black male motioned to Detective Heller to back up his vehicle. At this time, a second black male rode up on a bicycle and had a brief conversation with male #1. Detective Heller observed male #1 reach into a pill container which he removed from his pocket and place several white objects (crack cocaine) into the right hand of male #2. Male #2 then rode to Detective Heller's driver's window. Detective Heller said to male #2, "What's up man, you got forty?". The male stated, "Yeah", opened his right hand and gave Detective Heller four (later valtox positive) crack cocaine rocks. Detective Heller gave male #2 the aforementioned two twenty dollar bills.

On Thursday, 4/6/00, at 1415 hours, Detective Hendricks and Detective MacDougall observed a black male standing next to a vehicle at Northwest 15 Street and 4 Avenue. This male fit the description of male #1 from the above transaction. These Detectives spoke to the male who advised his name was Gary Williams (1/26/82). Detective Heller drove by this location and positively identified male #1 as Gary Williams. At a later date, from the video tape, male #2 was identified as Marion McCleod (6/28/81).

Williams and McCleod's charges are Delivery of Cocaine
Lab report: weight .34 Grams

Buy #1
    On Monday, 04/17/00, at 1240 hours, Detective Heller was working undercover making himself available to purchase narcotics on Northwest 4 Avenue between Northwest 13 Street and Northwest 16 Street. He was wired with a Unitel Listening device which was monitored by Detective Sergeant Sebregandio and this Detective. Detective Heller was using money from Investigative funds which was previously photocopied (two twenty dollar bills, serial numbers A85605384B and B90790044E). The photocopies of this money was placed in evidence. A narcotics transaction took place but was not video recorded because of a malfunction with the battery pack.

    Detective Heller was travelling south in the 1400 block of Northwest 4 Avenue and stopped in front 1420 Northwest 4 Avenue. A black male, later identified as Robert Williams, (DOB 11/22/77) jogged over to Detective Heller's window and stated, "What you need?". Detective Heller told Williams, "Can I get forty?" (Forty being street vernacular for forty dollars worth of crack cocaine). Williams was holding crack cocaine rocks in his right hand and handed Detective Heller two (later valtoxed positive) crack cocaine rocks. Detective Heller gave Williams the aforementioned two twenty dollar bills to complete this transaction. Detective Heller then left the area and placed the crack cocaine in evidence. Detective Shields was given a description of Williams and contacted him in front of 1420 Northwest 4 Avenue. Detective Heller drove to this location and positively identified Williams as the person who had just recently sold him

| Report Contains | | | Related Report Number(s) |
| --- | --- | --- | --- |
| Narrative Continuation | | | |
| Officer(s) Reporting | I.D. Number | Unit | Date |
| Detectives MacDougall & Hendricks | 1211 / 1207 | V56 / V43 | |

FORM Z-2488  Rev 8/88

Exhibit "A"

| Case Title | Narcotics Complaint |

**OFFENSE CHANGED TO** ☒ N/A

Buy #1

    On Thursday, 05/04/00, at 1550 hours, Detective Heller was working undercover making himself available to purchase narcotics on Northwest 4 Avenue between Northwest 13 Street and Northwest 16 Street. He was wired with a Unitel Listening device which was monitored by Detective Sergeant Sebregandio and this Detective. Detective Heller was using money from Investigative funds which was previously photocopied (two twenty dollar bills, serial numbers AF08645429A and G78574155C). The photocopies of this money was placed in evidence. A narcotics transaction took place and was video recorded. The original video tape was placed in evidence.

    Detective Heller was traveling south in the 1500 block of Northwest 4 Avenue and stopped at Northwest 15 Street. Two black males who are known to Detective Hendricks and I as Curtis Bernard Jones (DOB 3/2/82) and Gary Williams (DOB 1/26/82) approached Detective Heller's window. Detective Heller said to both, "What's up man, Can I get forty?" (Forty being a common street term for forty dollars worth of crack cocaine). Williams was now standing directly in front of Detective Heller's driver's window while Jones was just to his north. Williams said to Detective Heller, "Who do you know around here?". Detective Heller replied, "Tray and PJ". Williams looked at Jones and said to Jones, "Oh, Tray, yeah, yeah, alright" as he gave Jones the Okay to serve Detective Heller. Jones then handed Detective Heller two (later valtoxed positive) crack cocaine rocks in exchange for the aforementioned Forty dollars. Williams then said, "Alright" as Detective Heller drove away. Detective Heller then left the area and placed the crack cocaine in evidence. This investigation is ongoing.

        Gary Williams charge: Delivery of Cocaine
        Curtis Bernard Jones charge: Delivery of Cocaine
        Lab report: weight .33 Grams


Buy # 1

    On Wednesday, 05/10/00, at 1429 hours, Detective Heller was working undercover making himself available to purchase narcotics on Northwest 4 Avenue between Northwest 13 Street and Northwest 16 Street. He was wired with a Unitel Listening device which was monitored by Detective Sergeant Sebregandio and this Detective. Detective Heller was using money from Investigative funds which was previously photocopied (two twenty dollar bills, serial numbers F05360395B and AG27953217F). The photocopies of this money was placed in evidence. A narcotics transaction took place and was video recorded. The original video tape was placed in evidence.

    Detective Heller was traveling south in the 1500 block of Northwest 4 Avenue and was flagged down by a black male known to Detective Hendricks and I as Daimon Walters (DOB 11/29/77). Walters

Narrative Continuation
Detectives MacDougall & Hendricks    1211 / 1207    V56 / V43

14

| Original Date Reported | | | Case Title Narcotics Complaint | | | | |
|---|---|---|---|---|---|---|---|
| Reported: Day | Date | | Time (mil) | | Related Report Numbers | | |
| Incident Type 1. Felony 2. Traffic Felony | 3. Misdemeanor 4. Traffic Misdemeanor | 5. Ordinance 8. Other | OFFENSE CHANGED TO | | | | ☒ N/A |
| OFFENSE #1 | Type | Title | A-Attempted C-Committed | Statute Violation Number   I  I  -I | | Municipal Ordinance   I  I  -I | |
| OFFENSE #2 | Type | Title | A-Attempted C-Committed | Statute Violation Number   I  I  -I | | Municipal Ordinance   I  I  -I | |
| Incident Location (Street, Apt Number) | | | City | | Zip | Rept. Area | Zone |

a Unitel Listening device which was monitored by Detective Sergeant Sebregandio and Detective Hendricks. Detective Heller was using money from Investigative funds which was previously photocopied, ten twenty dollar bills, (serial numbers F68428376C, L13775411I, L54091011E, L17406786A, B80735013A, AL66424821A, D11706341B, G90819788D, J58530068A, B84839230A). The photocopies of this money along with the original video tape of the narcotics transaction were placed into evidence.

    Detective Heller was traveling south on Northwest 4 Avenue in the 1400 block when a black male known to Detective Heller and these Detective from earlier drug transactions as Troy Brown (DOB 05/15/75) flagged him down. Brown came up to the drivers side window and Detective Heller stated, "What's up man, you got 200?" (this is street term for 200 dollars worth of crack cocaine). Brown stated, "Pull over let me see what I got". Brown who is in a wheel chair went over to a parked van in his yard at 1420 Northwest 4 Avenue and retrieved several pieces of crack cocaine. He came back to Detective Heller's window and stated, "I got 150". Detective Heller stated, "How about 140?". Brown said, "Alright 140" and handed Detective Heller fourteen valtox positive crack cocaine rocks for seven of the before mentioned twenty dollar bills. Brown then stated to Detective Heller, "How much more you want?". Detective Heller stated, "60". Brown called out to another black male that was standing in his yard. This male is known to these Detective from earlier narcotics transactions including the earlier one on 05/17/00. This subject is Marion McCleod. Brown stated to McCleod, "You got 60?". McCleod stated, "Yea" and walked northbound behind the house at 1428 Northwest 4 Avenue. McCleod soon walked back and sold Detective Heller three valtox positive crack cocaine rocks for the three remaining twenty dollar bills. Brown stated to Detective Heller, "Write down my beeper number, I'll work deals with you, let me know when your coming and I'll have it ready". Detective Heller left the area and placed the crack cocaine into evidence.

    McCleod and Browns charge is Delivery of Cocaine.
    Lab report: weights combined 1.14 Grams

Buy # 1
    On Friday, 05/19/00, at 1704 hours, Detective Heller was working undercover making himself available to purchase narcotics on N.W. 4 Avenue between Northwest 13 Street and Northwest 16 Street. He was wired with a Unitel Listening device which was monitored by Detective Sergeant Sebregandio and Detective Hendricks. Detective Heller was using money from Investigative funds which was previously photocopied, two twenty dollar bills, serial numbers B47080855C and G27916421G. The photocopies of this money along with the original video tape of the narcotics transaction were placed into evidence.
    Detective Heller was traveling south on Northwest 4 Avenue in the 1400 block when he was

| Report Contains Narrative Continuation | | | | Related Report Number(s) | |
|---|---|---|---|---|---|
| Officer(s) Reporting Detectives MacDougall & Hendricks | | I.D. Number(s) 1211 / 1207 | | V56 / V43 | Date |
| Officer Reviewing (If Applicable) | I.D. Number | Router To | Referred To | Assigned To | By    Date |
| Case Status | Clearance Type 1. Arrest 2. Exceptional | 3. Unfounded | A-Adult J-Juvenile | Date Cleared | Arrest Number    Number Arrested 13 |
| Exception Type 1. Extradition 2. Declined | 2. Arrest on Primary Offense Secondary Offenses Without Prosecution | 3. Death of Offender 4. V/W Refused to Cooperate | 5. Prosecution Declined 6. Juvenile/No Custody | OBTS Number | |

FORM Z-248B Rev 6/88      18

| | |
|---|---|
| Original Date Reported | Case Reference: Narcotics Complaint |

flagged down by a black male known to Detective Heller and these Detectives from earlier narcotics transactions as Gary Williams (DOB 01/26/82). Williams rode his bicycle up to the drivers side window and Detective Heller stated, "Hey man, What's up, can I get forty?" (this is a common street term for forty dollars worth of crack cocaine ). Williams stated to Detective Heller, "Who do you know around here?". Detective Heller stated, "I know Tray". Williams then handed Detective Heller three valtox positive crack cocaine rocks for the before mentioned twenty dollar bills. Detective Heller left the area and placed the crack cocaine rocks into evidence.

    Gary Williams charge is Delivery of Cocaine.
    Lab report: weight .27Grams

Buy # 1

    On Thursday, 06/15/00 at approximately 1415 hours, Detective Heller was working undercover making himself available to purchase narcotics on N. W. 4 Avenue between Northwest 13 Street and Northwest 16 Street. He was wired with a Unitel Listening device which was monitored by Detective Sergeant Sebregandio, Detective MacDougall and Special Agent Felicioni. Detective Heller was using money from Drug Enforcement Agent Felicioni which was previously photocopied (ten twenty dollar bills, serial numbers K82241243B, H50667853A, D31896268A, D62760458A, J25525459B, AG07565941E, L03015463H, B22381741M, L84860786H, L75400739E, two fifty dollar bills, AF54336413A, G22607723A, two one hundred dollar bills, B14345108A, G63772754A).

    Detective Heller was traveling south on Northwest 4 Avenue in the 1400 block when he was flagged down by a black male known to these Detectives as Clemente Alexis in front of 1420 Northwest 4 Avenue. Clemente walked up to the driver's window and asked Detective Heller how much he needed. Detective Heller said that he needed five hundred dollars worth, about twenty five to thirty rocks. Clemente showed Detective Heller approximately ten crack cocaine rocks that he wanted to sell to Detective Heller for the five hundred dollars. Detective Heller said, "No" and asked for the guy in the wheel chair who he has purchased from in the past known to these Detectives as Troy Brown. Clemente ran up to 1420 Northwest 4 Avenue, returned, and said, "Troy is sleeping, go around the block and come back". Detective Heller drove around the block and parked across the street as directed by Clemente. When he did this, Detective Heller saw a couple of black males coming toward him from behind his vehicle and felt uncomfortable with these individuals actions. Detective Heller told Clemente that he would be back. Detective Heller then left the area.

    At approximately 1520 hours, Detective Heller returned to 1420 Northwest 4 Avenue and stopped. Detective Heller saw Troy Brown south of his vehicle. Troy Brown saw Detective Heller and started pushing his wheelchair towards him. Clemente came to Detective Heller's drivers window and Detective Heller told Clemente that he did not like those boys coming up toward his car when he was parked across the street earlier. Clemente said to him, "Want me to go get my shit?". Detective Heller told

---

OFFICER AFFIDAVIT: SWORN AND SUBSCRIBED BEFORE ME THIS _____ DAY OF _____ 19 ___
TITLE Detective    PRINT NAME Carl Hannold    CCN 1190
SIGNATURE _____

AFFIDAVIT OF COMPLAINT: I hereby swear that the above described acts were committed without my permission against my will, as reported by me, by person or persons unknown/known to me as _____ and further that I DO _____ DO NOT _____ desire to prosecute.
Sworn and subscribed by me this _____
day of _____ 19 ___ . Victim's Signature _____

FORM Z-3488 Rev. 6/98 (Back)

19

Narcotics Complaint

Heller paged Clemente Alexis to order another five hundred dollars worth of crack cocaine. Clemente returned Detective Heller's page. Detective Heller reminded Clemente that he was the person who bought the five hundred dollars from them last week. Detective Heller then asked him for another five hundred dollars ( crack cocaine ) and said that he wanted to talk to the guy in the wheel chair (Troy Brown). Clemente said that he had to bring it (the crack cocaine) to him (Troy Brown). They agreed to meet at 1420 Northwest 4 Avenue in one hour. This conversation was recorded and the original audio tape was placed in evidence.

    On Thursday, 6/22/00, at approximately 1600 hours, Detective Heller drove to 1420 Northwest 4 Avenue. Detective Heller was wired with a Unitel Listening Device which was monitored by Detective Sergeant Sebregandio, Special Agent Felicioni and myself. Special Agent Felicioni previously photocopied and gave Detective Heller five hundred dollars from D.E.A.'s funds. The denominations and serial numbers are two one hundred dollar bills, A18800871A, E36461118A; two fifty dollar bills, AF41995960A, AG83533784A; eight twenty dollar bills, D80000791A, B62183970D, B43215814B, B67176630J, L05838300D, L74513964D, K69318054B, G94866280E; four ten dollar bills, G60192072C, L80302137C, B73678475A, B13168203B. A video tape of the below described transaction was placed in evidence.

    Detective Heller stopped in front of 1420 Northwest 4 Avenue. Gary Williams and Clemente Alexis came to his window. At the same time, Williams said, "What you need, What you need?" and Clemente said, "Go around and come back, I'll go get him". Detective Heller responded to Clemente and said, "I'll go around the block" and did so. When Detective Heller arrived again at 1420 Northwest 4 Avenue, Troy Brown came to Detective Heller's window. Detective Heller said, "What's up buddy, got it for me?". Brown said, "Five hundred?" and Detective Heller responded, "Yeah". Brown then said to Clemente, "Come on Clemente". Clemente then came to Detective Heller's window and gave him thirty four pieces of crack cocaine. Clemente said, "That's enough" as Troy Brown agreed and while Detective Heller was looking at the crack cocaine. Detective Heller then gave Troy Brown the aforementioned five hundred dollars. Detective Heller then left the area.

    Detective Heller found the thirty four pieces of crack cocaine rocks to be valtoxed positive. The weight of the crack cocaine, approximately 3 grams. The crack cocaine and the photocopies of the money were placed in evidence. This investigation continues.

    Troy Brown and Clemente Alexis charge for this transaction is Delivery of Cocaine.
Lab report: weight 2.76 Grams

Buy #1
    On 7/12/00, Detective Heller was working undercover making himself available to purchase crack cocaine between Northwest 13 Street and Northwest 16 Street on Northwest 4 Avenue. Detective Heller has been working undercover during this operation and has made several purchases of crack cocaine in the past. Detective Heller was wired with a Unitel Listening Device which was monitored by Detective

OFFICER AFFIDAVIT: SWORN AND SUBSCRIBED BEFORE ME THIS _____ DAY OF _____ 19 ___
TITLE Detective  PRINT NAME Carl Hannold  CCN 1190
SIGNATURE _____

AFFIDAVIT OF COMPLAINT: I hereby swear that the above described acts were committed without my permission against my will, as reported by me, by person or persons unknown/known to me as _____ and further that I DO _____ DO NOT _____ desire to prosecute.
Sworn and subscribed by me this _____
day of _____ 19 ___ . Victims Signature _____

21

FORM Z-3498 Rev. 9/98 (Back)